IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JUSTIN TACKETT, ) | |
| Y46731, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 22-cv-1260-DWD |
| DAVID MITCHELL, ) | |
| PERCY MYERS, ) | |
| CHRISTINE BROWN, ) | |
| MARCIA HILL, ) | |
| BILL LOY, ) | |
| LANE, ) | |
| PHIL MARTIN, ) | |
| ) | |
| Defendants.[1] ) | |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Justin Tackett, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Robinson Correctional Center (Robinson), brings this civil rights action pursuant to 42 U.S.C. § 1983. This case concerns the care that Plaintiff has received for chronic lung and sinus issues, first at Pinckneyville Correctional Center, and then again at Robinson after his transfer to that facility in October of 2022. Defendants Loy and Martin (both individuals who have interacted with Plaintiff at Robinson) have filed a Motion for Summary Judgment (Doc. 77) on the issue of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison

---

[1] The Clerk of Court is **DIRECTED** to correct Defendant Lane's name to Joshua Lane (Doc. 61). Additionally, Defendant Martin is listed twice on the docket sheet, once as "Martin" and once as Phil Martin. The Clerk of Court is **DIRECTED** to **TERMINATE** "Martin," and to leave "Phil Martin."

Litigation Reform Act, 42 U.S.C. § 1997e(a). Plaintiff responded. (Doc. 79). The evidence supports Plaintiff's contention that he exhausted administrative remedies so the Motion will be denied. All other defendants had the opportunity to file motions on the issue of exhaustion but did not file anything, so the case is now ready to advance to merits discovery.

## BACKGROUND

Plaintiff alleges that his problems began in October of 2021 with significant pain and discomfort in his lungs. After multiple rounds of amending his complaint, Plaintiff was allowed to proceed against Defendants Dr. Myers, Nurse Hill, Warden Mitchell, and Healthcare Unit Administrator Brown for their roles in addressing his medical needs or investigating and resolving his repeated grievances and correspondence about the same while he was at Pinckneyville. (Doc. 17). Service of process issued and these parties' filed answers. Before anyone filed a motion on the exhaustion of administrative remedies, Plaintiff moved for leave to file a third amended complaint on August 8, 2023.

Ultimately, the Court granted his request on August 30, 2023, and it designated one additional claim against Defendants Lane, Loy, and Martin—three officials at Robinson. Plaintiff alleged that he had been transferred to Robinson in the Fall of 2022. Initially, he received medical attention that he felt was promising. However, as time progressed he became concerned that his symptoms persisted and that he was not being treated for his ongoing issues. He alleged that he submitted grievances that Defendant Loy (the Warden) was a signatory for, but his grievances did not result in adequate care. He also alleged that Defendant Martin, the healthcare unit administrator, had

acknowledged grievances about his medical issues, but had not taken any responsive action.

Based on the allegations in the Third Amended Complaint, which are more fully recounted in the Order of Initial Review (Doc. 42), the Court designated one claim to proceed against Lane, Loy, and Martin:

> **Claim 4:** Eighth Amendment deliberate indifference claim against Defendants Bill Loy, Martin, and Lane for failing to ensure adequate follow-up care for Plaintiff's chest/lung infection or condition after his admission to Robinson up until present.

(Doc. 42 at 4).

The Defendants have submitted 279-pages of grievance documentation, while Plaintiff has responded with just a single grievance, and responses. The Court finds that Plaintiff's exhibits are all that is necessary to resolve this motion, so it will not summarize the defendants exhibits at length. Suffice it to say, the Defendants identified six grievances about medical care that Plaintiff fully exhausted before filing the Third Amended Complaint (Doc. 77-1 at 30-49), and they identified an additional 11 grievances about medical care that Plaintiff had filed at Robinson, but that had not yet been fully exhausted by the time he filed his Third Amended Complaint. (Doc. 77 at 9-14).

### FINDINGS OF FACT

Grievance number 23-0500E was submitted as an emergency grievance by Plaintiff on April 19, 2023. (Doc. 79 at 7). It was deemed a non-emergency, and it received a routine response from the counselor on May 4, 2023. The grievance officer responded on

May 12, 2023, and the Warden concurred on May 16, 2023. (Doc. 79 at 6). On June 12, 2023, the Administrative Review Board (ARB) responded. (Doc. 79 at 9).

In the April 19, 2023, grievance, Plaintiff wrote at length about his concerns with the healthcare he was receiving. He stated, "Phil Martin is fully aware of my situation. Doctors have ordered CT scans and the have been approved. The chest CT has been approved for months since end of January 2023[.]" (Doc. 79 at 8). Plaintiff goes on to explain that he has been on medication, but he does not feel it is helping and he describes his physical symptoms as deteriorating. He explains that he has yet to undergo the CT scan, despite it being approved for quite some time. In closing he writes, "I feel with the symptoms I'm having the CT scans have been approved they need to get me out to see what's causing it how bad it is and see the damage its caused and fix it. I have no choice at this point my next step will be legal action for medical neglect." (*Id.*). Plaintiff sought emergency review of this grievance, but the Chief Administrative Officer declined emergency review. (Doc. 79 at 7).

In response to the grievance, the counselor indicated, "Per HCUA Martin, you had another issue that the MD wanted tested for and asked to schedule the more acute issue before the CT for sinuses. Per medical records Director J. Lane, he had these completed on 4.25.23." (Doc. 79 at 7). The grievance officer parroted the counselor's response and recommended that the grievance be "partially affirmed," without further explanation of what that meant. (Doc. 79 at 6). The Chief Administrative Officer concurred. (Doc. 79 at 6). On June 12, 2023, the ARB denied the grievance as appropriately addressed by the facility. (Doc. 79 at 9).

## CONCLUSIONS OF LAW

A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). After hearing evidence, finding facts, and determining credibility, the court must decide whether to allow the claim to proceed or to dismiss it for failure to exhaust. *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). The court is not required to conduct an evidentiary hearing if there is no genuine dispute of material fact, and the determination is purely legal. *See e.g., Walker v. Harris*, 2021 WL 3287832 * 1 (S.D. Ill 2021); *Miller v. Wexford Health Source, Inc.*, 2017 WL 951399 *2 (S.D. Ill. 2017).

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d at 740. "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). The regulations first require an inmate to file his grievance with his counselor within 60 days of the discovery of an incident, occurrence, or problem that gave rise to the grievance. 20 ILL. ADMIN. CODE § 504.810(a). Administrative regulations require the grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). If the names of the individuals are unknown to the offender, he can still file the grievance but "must include as much descriptive information about the individual as possible." *Id.* Further, the Seventh Circuit has held that an inmate is required to provide enough information to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).

If the complaint is not resolved through the counselor, the grievance may be submitted to a grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (CAO).  20 ILL. ADMIN. CODE § 504.830(e). The CAO then provides the inmate with a written decision on the grievance. *Id.*

If the inmate is not satisfied with the CAO's response, he can file an appeal with the IDOC Director through the Administrative Review Board (ARB). 20 ILL. ADMIN. CODE § 504.850(a).  The ARB must receive the appeal within 30 days of the date of the CAO's decision. *Id.* The inmate must attach copies of the responses from the grievance officer and CAO to his appeal. *Id.* The ARB submits a written report of its findings and recommendations to the Director, who them makes a final determination. 20 ILL. ADMIN. CODE § 504.850(d), (e).

B. Analysis

The Court finds that the Motion for Summary Judgment can be resolved on paper without a *Pavey* hearing.  It is indisputable that Plaintiff had access to the grievance procedure, that he knew how to use it, and that he adequately used the procedure to exhaust many medical grievances in recent years.  This leaves only the issue of if any of Plaintiff's grievances are sufficient to exhaust the claims against Defendants Martin and Loy for allegedly turning a blind eye or failing to investigate and address alleged shortfalls in Plaintiff's medical care at Robinson.

The defendants argue that Plaintiff does not have any sufficient grievances, but this argument is almost baffling given the available grievance record.  In grievance 23-0500E, Plaintiff plainly named Defendant Martin and indicated that Martin was aware of

his ongoing need for a CT scan, and outstanding medical orders for the same, but that no one had ensured Plaintiff was sent out for the CT scan. Martin argues that this does not meet the "particularity" requirement of §1997e(a) without describing what that standard is, or how Plaintiff failed to meet it. Reading the grievance in Plaintiff's favor, it is reasonable to infer that by saying Martin knew of all his issues, and then complaining nothing had yet been done, that Plaintiff was complaining Martin had not helped him secure care that he knew Plaintiff needed. This is more than enough to exhaust a claim against Martin concerning his role in securing the needed care. Martin also participated in responding to the grievance, and part of his response confirmed that Plaintiff still had an outstanding need for a CT scan. In the face of this evidence, it is hard to understand how Martin could try to claim he had no warning of Plaintiff's claims or chance to resolve them.

It should also be noted that Plaintiff filed four other fully exhausted grievances prior to grievance 23-0500E concerning his desire for medical care at Robinson. Grievance numbers 23-0232E (February 28, 2023), 23-0146E (January 26, 2023), 22-1150E (October 26, 2022), 22-1347E (December 13, 2022). (Doc. 77-1 at 30-48). Martin participated in responding to every single one of these grievances, and they all addressed Plaintiff's ongoing desire for access to treatment or medication for his lungs/sinuses. Notably, in response to the January 26, 2023, and February 28, 2023, grievances, Martin noted that Plaintiff had pending orders for a chest CT, and he reported in response to the January 2023 grievance that he had contacted Defendant Lane who was supposed to be

scheduling the CT. (Doc. 77-1 at 29, 35). Given all of this information, it is clearly established that Plaintiff sufficiently exhausted his administrative remedies as to Martin.

As for Loy, he argues he was not personally named in any of Plaintiff's many grievances, but as Plaintiff has always contended, Loy as Warden was repeatedly made aware of his complaints about the adequacy of medical care because one of his roles was to approve or reject emergency designation for grievances, a role he performed for grievance 23-0500E. The primary purpose of a grievance is to alert officials to a problem so that they have a chance to fix it, not to give a potential defendant notice of a future lawsuit. *See e.g., Maddox v. Love*, 655 F.3d 709, 720-22 (7th Cir. 2011) (finding that a grievance that omitted the names of prison administrators was still sufficient for exhaustion purposes where it clearly gave the prison notice of an issue and a chance to fix it). As the first recipient of Plaintiff's emergency grievance about ongoing lung and sinus issues and his desire for a CT, Loy had adequate warning and a chance to address the situation.

Courts have found that prison officials who are named in grievance responses, or who directly participate in fielding grievances have ample notice for exhaustion purposes. *See e.g., Smith v. Thompson*, 2020 WL 2616307 at *5 (S.D. Ill. May 22, 2020) (finding that two officials who participated in responding to a grievance were provided sufficient notice of an inmate's problem for purposes of exhaustion); *Miller v. Mahone*, 2011 WL 5508976 at * 3 (C.D. Ill. Nov. 10, 2011) (rejecting a warden's contention that a claim was not exhausted against him where he was not named in the grievance because the ARB's response named the warden). Here, the Court finds that Plaintiff's many

grievances seeking adequate healthcare at Robinson, including grievance 23-0500E, are adequate proof that Warden Loy had ample notice of his dissatisfaction with the care, and he had an opportunity to investigate and intervene if necessary. This satisfies the purpose of the PLRA's exhaustion requirement.

## DISPOSITION

The Motion for Summary Judgment on the issue of exhaustion (Doc. 77) is **DENIED**. A merits discovery schedule will issue separately.

The Clerk of Court is **DIRECTED** to update the docket sheet consistent with footnote 1.

**IT IS SO ORDERED.**

Dated: April 5, 2024

*s/ David W. Dugan*
DAVID W. DUGAN
United States District Judge